IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

PHARMA FUNDING, LLC, a Delaware
limited liability company,

      Plaintiff,

vs.                                                                                  Civil Action No. _____

SEM PHARMACY & MEDICAL SUPPLY, LLC,
a Texas limited liability company, and DIANNA G.
YACOUB a/k/a DIANNA GUTIERREZ,

      Defendants.
_____/

## PLAINTIFF PHARMA FUNDING, LLC'S COMPLAINT

Plaintiff PHARMA FUNDING, LLC, a Delaware limited liability company, sues Defendants SEM PHARMACY & MEDICAL SUPPLY, LLC, a Texas limited liability company, and DIANNA G. YACOUB a/k/a DIANNA GUTIERREZ, and alleges:

## JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. §§1332(a) because there is diversity of citizenship and the Plaintiff is entitled to judgment that exceeds $75,000, exclusive of interest, costs and attorneys' fees.

2. Plaintiff is a citizen of Delaware and all of its members are citizens of California. Defendants are citizens of Texas and the causes of action arose in Texas.

3. Venue is proper in this Court pursuant to 29 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claims occurred in the Southern District of Texas. In particular, Defendants directed the wrongful acts described herein from their Texas offices.

4. In connection with the acts alleged in this lawsuit, Defendants, directly and/or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to the mail and

internet, to carry out the conduct in violation of the applicable contracts, loan documents, and statutes as set forth herein.

## THE PARTIES AND RELATED ENTITIES

5. Plaintiff PHARMA FUNDING, LLC ("Pharma Funding" or "Buyer" when quoting from the Accounts Receivable Master Purchase Agreement or related documents) is a Delaware limited liability company with its principal place of business in California. All of its members and managers are citizens of California.

6. Pharma Funding's primary business is to purchase accounts receivable from pharmacies.

7. Defendant SEM PHARMACY & MEDICAL SUPPLY, LLC ("SEM" or "Company" when quoting from the Accounts Receivable Master Purchase Agreement or related documents) is a Texas limited liability company with its principal place of business in Houston, Texas. Defendant may be served with process by serving its Registered Agent, James Evans at 14090 Southwest Freeway, Suite 300, Sugarland, Texas 77479.

8. Defendant DIANNA G. YACOUB ("YACOUB") is an owner and manager of SEM. Upon information and belief, YACOUB owns 100% of SEM. Defendant YACOUB is a citizen of Texas who resides in Houston, Texas. YACOUB is also known as Dianna Gutierrez. Defendant YACOUB may be served with process at 2411 W T C Jester Boulevard, Houston, Texas 77008 or 10301 Northwest Freeway #307, Houston, Texas 77092.

9. SEM operates a pharmacy in Houston, Texas.

## FACTUAL BACKGROUND

10. Beginning in April 2019, Pharma Funding began a business relationship with SEM and its principal, YACOUB.

11. At various times between April 2019 and July 2019, SEM sold and transferred to Pharma Funding all of its right, title and interest in claims which were, or expected to be, approved for payment for medical goods or services from insurance companies and/or other third-party payors, thereby creating healthcare insurance receivables and accounts receivable (the "Qualified Accounts Receivable").

12. On or about April 16, 2019, SEM executed in favor of Pharma Funding an *Accounts Receivable Master Purchase Agreement* (the "MPA") (**Exhibit A**) to memorialize the terms and conditions under which Pharma Funding agreed to purchase, and SEM agreed to sell, Qualified Accounts Receivable.

13. Also, on or about April 16, 2019, YACOUB executed in favor of Pharma Funding, a *Quality Assurance Money Back Guarantee* ("Money Back Guarantee"). (**Exhibit B**).

14. The amount of SEM's Qualified Accounts Receivable varied, as Pharma Funding purchased additional Qualified Accounts Receivable from SEM under the terms of the MPA. Subsequent purchases were memorialized in four purchase addenda (individually, "Purchase Addendum" and collectively, "Purchase Addenda"). (**Composite Exhibit C**).

15. All of the Purchase Addenda were executed by YACOUB, as Dianna Gutierrez, "Managing Officer."

16. Under the terms and conditions of the MPA and the Purchase Addenda (collectively, the "Transaction Documents"), SEM retained an option to repurchase any Qualified Accounts Receivable it sold to Pharma Funding, which option would expire after ninety (90) days after closing of the sale of such Qualified Accounts Receivable.

17. Pursuant to the MPA, SEM agreed at all times to deposit and maintain all payments it received on account of any Qualified Accounts Receivable that Pharma Funding had purchased into

a "Beneficial Owner Account" serviced by Silvergate Bank or other depository designated by Pharma Funding.

18. Thus, from the dates of closing on the sales of Qualified Accounts Receivable, SEM was required to deposit into the Beneficial Owner Account all payments that SEM received from healthcare payors, pharmacy benefits managers ("PBMs"), or other third-party payors on account of any Qualified Accounts Receivable that Pharma Funding had purchased.

19. More specifically, the MPA obligated SEM to ensure that all insurance and other third-party payor payments related to a transaction concerning the Qualified Accounts Receivable, including all ACH/ETF payments and checks (collectively "Payments"), were to be directed to and/or deposited into the Beneficial Owner Account, without exception, and to ensure that any non-electronic funds received from any payor were to be deposited into the Beneficial Owner Account within two (2) business days of receipt of such payment; SEM was required to notify Pharma Funding and deliver electronic copies of checks or other nonelectronic forms of payments to Pharma Funding immediately upon receipt.

20. SEM further agreed in the MPA to "immediately" notify Pharma Funding, and provide to Pharma Funding, copies (as appropriate), of "any correspondence, or notice relating to the Qualified Accounts Receivables," and "any communication in any other form, e.g., via telephone, email or facsimile transmission, traditional mail[,]" and to "[i]mmediately notify" Pharma Funding of "any payor audit, recoupment, prepayment review, prior authorization, contract suspension, or contract termination" related to any Qualified Accounts Receivable. *See*, MPA ¶ 15 (l), (o).

21. Additionally, pursuant to the MPA, SEM was obligated to ensure that Pharma Funding had "[v]iew-only" access to SEM's corporate operating account, through Decision Logic, a verification system that verifies banking information online and in real time.

22. At material times, SEM failed to deposit Payments which rightly belonged to Pharma Funding into the Beneficial Owner Account. Moreover, SEM deposited checks directly into its operating account or other unauthorized account(s) rather than into the Beneficial Owner Account.

23. In particular, with regard to the tranches set forth in the Purchase Addenda attached as **Composite Exhibit C**, SEM sold, and Pharma Funding purchased, Qualified Accounts Receivable having an aggregate Insurance Pay Amount ("IPA") of $989,526.76, as evidenced by the Transaction Documents.

24. On or about July 12, 2019, Pharma Funding notified Defendants that it had become aware of Payments SEM had received that had not been deposited into the Beneficial Owner Account and demanded that those Payments immediately be wired into that account.

25. Shortly thereafter, on or about July 15, 2019, Defendant did deposit a portion of Pharma Funding's Payments into the Beneficial Owner Account, of which $18,419.86 corresponded to the tranches represented in the Purchase Addenda attached as **Composite Exhibit C** (the remainder of Defendants' Payments deposit of July 15, 2019 corresponded to other Purchase Addenda not at issue herein). Defendants have made no further deposits of Payments into the Beneficial Owner Account since July 15, 2019.

26. Pharma Funding's final purchase of Qualified Accounts Receivable from SEM closed on or about July 5, 2019. Accordingly, all of SEM's options to repurchase any of the Qualified Accounts Receivable expired on or before October 5, 2019.

27. SEM never exercised an option to repurchase any of the Qualified Accounts Receivable under the terms and conditions of the Transaction Documents.

28. SEM never notified Pharma Funding of any notices, correspondence, audits, reviews, or any other communication from any third-party payor indicating the denial or reduction of any portion of the IPA of any Qualified Accounts Receivable.

29. SEM received, but failed to deposit, Payments related to the Qualified Accounts Receivable into the Beneficial Owner Accounts and/or failed to ensure that ACH/EFT Payments related to the Qualified Accounts Receivable were made into the Beneficial Owner Account, all of which Payments rightly belonged to Pharma Funding.

30. Moreover, on information and belief, SEM caused such Payments to be deposited directly into SEM's operating account(s), or other unauthorized third-party's(ies') bank account(s), rather than into the Beneficial Owner Account as required under the terms and conditions of the MPA.

31. Pursuant to the Money Back Guarantee attached as **Exhibit B**, YACOUB guaranteed SEM's obligations including, but not limited to, all of its covenants and representations in the Transaction Documents, all unpaid amounts of Qualified Accounts Receivable purchased by Pharma Funding, and all expenses (including legal fees) incurred by Pharma Funding in connection with the MPA and Money Back Guarantee or the collection thereof.

32. All conditions precedent to bringing this lawsuit have occurred, been performed or have been waived by the Defendants.

33. Pharma Funding, on its behalf and by way of undersigned counsel, have demanded payment of the amounts stated herein.

34. Pharma Funding has retained the undersigned counsel to represent it in this claim and is required to pay said counsel a reasonable fee for their services.

## COUNT I
## BREACH OF MASTER PURCHASE AGREEMENT

35. Pharma Funding incorporates the allegations of paragraphs 1 through 34 as if fully set forth herein.

36. The MPA is a valid and enforceable written contract.

37. Pursuant to the MPA, SEM had an option to repurchase the Qualified Accounts Receivables at a price discounted from the IPA, failing which it was obligated to transfer all remaining rights to the Qualified Accounts Receivables to Pharma Funding. *See,* MPA ¶¶ 7, 10. SEM has done neither.

38. SEM transferred or deposited only $18,419.86 of the Payments related to the Purchase Addenda attached as **Composite Exhibit C** into the Beneficial Owner Account. SEM has not transferred the remaining rights to the Qualified Accounts Receivable nor paid the difference of $971,106.90 to Pharma Funding.

39. SEM has further breached Paragraph 15 of the MPA that provides, in pertinent part:

> 15. **Seller Covenants.** In addition to executing and delivering all required data, instruments and notices, and as evidenced by the attached Quality Assurance Money Back Guarantee, Seller covenants and promises that Seller will:
>
> a. Ensure that all insurance payments received from a payor related to a transaction with Pharma Funding, will be firstly and directly deposited into the Beneficial Owner Account, without exception[;]
>
> b. Ensure that all payors with ACH /EFT capabilities deliver payments electronically (ACH/EFT) directly into Beneficial Owner Account[;]
>
> c. Ensure that any non-electronic funds received from any payor will be deposited into the Beneficial Owner Account within 2 business days of receipt of such payment and the Company will notify Pharma Funding and deliver electronic copies of checks or other non-electronic forms of payments to Pharma Funding immediately upon receipt[;]
>
> d. Provide Pharma [Funding] with a 90-day notice prior to re-directing any deposit away from the Beneficial Owner Account on any payment related to transactions with Pharma Funding[;]

e. Provide Pharma Funding with View-only access to all Company bank accounts[,] PSAO portals[,] and Billing Systems[;]

f. NOT take any action or withhold any information that may result in delay of payments owed to Pharma [Funding][;]

g. Operate in good faith for the benefit of [] Pharma [Funding] at all times and at Pharma[] [Funding's] sole discretion;

h. Disclose any material information, such as debt to suppliers, marketers, or other service providers that may impact Company's ability to produce additional accounts receivables or conduct its business as required to fulfill its obligations;

i. NOT allow clawbacks, reversals, penalties, or any other Company contingent liability or condition to impact or delay payments owed to Pharma [Funding] related to Qualified Accounts Receivables purchased from Company;

j. Cooperate with all requests of Pharma to advise any obligor as to the transfer and assignment of such Qualified Accounts Receivables to Pharma [Funding] in order to ensure payment is directly remitted to Pharma on a timely basis;

k. Deliver to Pharma [Funding], upon request, any existing documents necessary to enforce the collections of the Qualified Accounts Receivables including bills, medical reports, payments, lien letters, correspondence, etc;

l. Immediately forward to Pharma [Funding] any correspondence, or notice relating to the Qualified Accounts Receivables, and immediately report to Pharma [Funding] any communication in any other form, e.g. via telephone, email or facsimile transmission, traditional mail;

m. Instruct its staff that they must NOT disclose to any outside party the existence of this Agreement, the name of [] Pharma [Funding] or the terms and conditions herein;

n. NOT inform patients, attorneys, or carriers that the account receivable has been sold, or the price for which it was sold and, refer to Pharma [Funding] as the collection and/or billing agent of Company in all communications with patients or other third parties;

o. Immediately notify Pharma [Funding] of any payor audit, recoupment, prepayment review, prior authorization, contract suspension, or contract termination; []

p. Provide a minimum of ninety (90) days prior written notice to Pharma [Funding] of any relocation of Company's offices or facilities[; and]

        q. **If Pharma [Funding], in its sole discretion, determines that any of the covenants in section 2 have been violated by the Company, reserves the right to immediately demand a refund of all monies paid to Company that have outstanding payments due, pursuant to the Quality Assurance Money Back Guarantee.**

(Emphasis in original document)

40. SEM has defaulted on, and is in breach of, Paragraph 15 of the MPA by doing, or failing to do, one or more of the following:

    a. Failing to ensure that all insurance payments received from a payor related to a transaction with Pharma Funding will be firstly and directly deposited into the Beneficial Owner Account, without exception;

    b. Failing to ensure that all payors with ACH/EFT capabilities deliver payments electronically (ACH/EFT) directly into the Beneficial Owner Account;

    c. Failing to ensure that any non-electronic funds received from any payor will be deposited into the Beneficial Owner Account within 2 business days of receipt of such payment and failing to notify Pharma Funding and deliver electronic copies of checks or other non-electronic forms of payments to Pharma Funding immediately upon receipt;

    d. Failing to provide Pharma Funding with a 90-day notice prior to re-directing any deposit away from the Beneficial Owner Account on any payment related to transactions with Pharma Funding;

    e. Failing to provide Pharma Funding with view-only access to all of SEM's bank accounts, PSAO portals, and Billing Systems;

    f. Taking action to withhold information that may have resulted in delay of payments owed to Pharma Funding;

    g. Failing to operate in good faith for the benefit of Pharma Funding at all times and at Pharma Funding's sole discretion;

    h. Failing to disclose any material information, such as debt to suppliers, marketers, or other service providers that may have impacted SEM's ability to produce additional accounts receivables or conduct its business as required to fulfill its obligations;

    i. (Not applicable);

    j. Failing to cooperate with all requests of Pharma Funding to advise any obligor as to the transfer and assignment of such Qualified Accounts Receivables to Pharma

    Funding in order to ensure payment is directly remitted to Pharma Funding on a timely basis;

    k. Failing to deliver to Pharma, upon request, any existing documents necessary to enforce the collections of the Qualified Accounts Receivables including bills, medical reports, payments, lien letters, correspondence, etc;

    l. Failing to immediately forward to Pharma [Funding] any correspondence, or notice relating to the Qualified Accounts Receivables, and failing to immediately report to Pharma [Funding] any communication in any other form, e.g. via telephone, email or facsimile transmission, traditional mail;

    m. (Not applicable);

    n. (Not applicable);

    o. Failing to immediately notify Pharma [Funding] of any payor audit, recoupment, prepayment review, prior authorization, contract suspension, or contract termination; and

    p. Failing to provide a minimum of ninety (90) days prior written notice to Pharma of any relocation of Company's offices or facilities.

41. The foregoing are separate, substantial and material breaches of Paragraphs 7, 10 and 15 of the MPA, resulting in damages to Pharma Funding, including (without limitation) the unpaid amounts.

42. These breaches proximately caused, and were a substantial factor in causing, Pharma Funding's damages.

43. Pursuant to Paragraph 27 of the MPA, the prevailing party is entitled to recovery of its costs and attorneys' fees.

WHEREFORE, Plaintiff Pharma Funding demands judgment for damages against SEM, plus interest, costs, attorneys' fees, and such other and further relief as this Court deems just.

**COUNT II**
**<u>CIVIL THEFT UNDER CALIFORNIA LAW</u>**

44. Pharma Funding incorporates the allegations of paragraphs 1 through 34 and 36 through 40 as though fully set forth herein.

45. Pursuant to Paragraph 25 of the MPA, all questions concerning the performance, construction, validity, and interpretation of the MPA are to be governed by California law.

46. Under California Penal Code §484, "theft" is defined, in pertinent part, as follows:

> (a) Every person who shall feloniously steal, take, carry, lead or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him or her, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money… is guilty of theft.

47. California Penal Code §532 addresses fraudulently obtaining money by stating, in pertinent part:

> (a) **Every person who knowingly and designedly, by any false or fraudulent representation or pretense, defrauds any other person of money**, labor, or property, whether real or personal, or who causes or procures others to report falsely of his or her wealth or mercantile character, and by thus imposing upon any person obtains credit, **and thereby fraudulently gets possession of money or property,** or obtains the labor or service of another, **is punishable in the same manner and to the same extent as for larceny of the money or property so obtained.** (emphasis added)

48. California Penal Code §490(a) states:

> Wherever any law or statute of this state refers to or mentions larceny, embezzlement, or stealing, said law or statute shall hereafter be read and interpreted as if the word "theft" were substituted therefor.

49. California Penal Code §503 defines "embezzlement" as follows:

> Embezzlement is the fraudulent appropriation of property by a person to whom it has been intrusted (sic).

50. California Penal Code §504(a) addresses property that is subject of a contract of purchase as follows:

> **Every person who shall fraudulently remove, conceal or dispose of any** goods, chattels or effects, leased or let to him by any instrument in writing, or

any **personal property or effects of another in his possession, under a contract of purchase not yet fulfilled**, **and any person in possession of such goods, chattels, or effects knowing them to be subject to such lease or contract of purchase who shall so remove, conceal or dispose of the same with intent to injure or defraud the lessor or owner thereof, is guilty of embezzlement.** (emphasis added)

51. California Penal Code §506 addresses misappropriation by fiduciary or contractor, in pertinent part, as follows:

> **Every** trustee, banker, merchant, broker, attorney, **agent,** assignee in trust, executor, administrator, **or collector, or person otherwise entrusted with or having in his control property for the use of any other person, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or secretes it with a fraudulent intent to appropriate it to such use or purpose, and any contractor who appropriates money paid to him for any use or purpose, other than for that which he received it, is guilty of embezzlement . . . .** (emphasis added)

52. California Penal Code §496 states, in pertinent part:

> (a) Every person who buys or **receives any property** that has been stolen or **that has been obtained in any manner constituting theft** or extortion, knowing the property to be so stolen or obtained, or who conceals, sells, withholds, or aids in concealing, selling, or withholding any property from the owner, knowing the property to be so stolen or obtained, shall be punished by imprisonment in a county jail for not more than one year, or imprisonment pursuant to subdivision (h) of Section 1170. However, if the value of the property does not exceed nine hundred fifty dollars ($950), the offense shall be a misdemeanor, punishable only by imprisonment in a county jail not exceeding one year, if such person has no prior convictions for an offense specified in clause (iv) of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or for an offense requiring registration pursuant to subdivision (c) of Section 290. (emphasis added)
>
> ***
>
> (c) Any person who has been injured by a violation of subdivision (a) or (b) may bring an action for three times the amount of actual damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's fees.

53. Defendants took Payments on account of Qualified Accounts Receivable that Pharma Funding had purchased, which Payments belonged to Pharma Funding.

54. Defendants fraudulently appropriated Payments belonging to Pharma Funding that had been entrusted to them, by receiving such Payments and failing to remit them to Pharma Funding as required, and by misrepresenting to Pharma Funding that such Payments had not been received.

55. Defendants knowingly and designedly defrauded Pharma Funding of money by failing to direct all Payments on account of Qualified Accounts Receivable owned by Pharma Funding into the Beneficial Owner Account.

56. Defendants had control of the Payments for the use and benefit of Pharma Funding, and they fraudulently appropriated such Payments for a use or uses other than the due and lawful purpose for which those Payments had been entrusted. In particular, Defendants received or fraudulently redirected Pharma Funding's money that was required to be deposited into the Beneficial Owner Account into other unauthorized account(s).

57. As set forth in Count I, above, SEM failed to fulfill the MPA, which was a contract of purchase, including by failing to deposit into the Beneficial Owner Account, all Payments SEM received on account of Qualified Accounts Receivable that Pharma Funding had purchased. Without limitation, Defendants fraudulently removed, concealed, or disposed of such funds in their possession by depositing them into other unauthorized account(s) and by blocking Pharma Funding's view-only access to SEM's operating account(s).

58. Defendants had possession of such Payments that were owned by Pharma Funding and, knowing that the Payments were subject to the MPA, Defendants removed, concealed, or disposed of the Payments with the intent to injure or defraud Pharma Funding.

59. Defendants collected Payments on account of Qualified Accounts Receivable that Pharma Funding had purchased, or had such Payments in their possession or under their control for the use of Pharma Funding, even if those Payments were in the name of one or both of the Defendants and even

if one or both of the Defendants had any direct or indirect interest in or to such Payments, or any portion of them. Accordingly, Defendants were "collectors" as defined in California Penal Code § 506.

60. By engaging in the conduct described in the foregoing Paragraphs, Defendants obtained and received the proceeds of Qualified Accounts Receivable rightly belonging to Pharma Funding in a manner constituting "theft" as defined in California Penal Code §§484(a), 490(a), 496(a), 503, 504(a), 506, and/or 532, and/or concealed, withheld, or aided in concealing or withholding such funds from Pharma Funding, knowing that the funds were so obtained.

61. As a direct and proximate result of Defendants' theft of Pharma Funding's money, Pharma Funding has been injured and has suffered damages of $971,106.90 plus interest, costs, and attorneys' fees.

62. Under California Penal Code §496(c), Pharma Funding is entitled to judgment against Defendants for three (3) times the amount of Pharma Funding's actual damages, as well as its costs of suit, and reasonable attorneys' fees.

WHEREFORE, Plaintiff Pharma Funding demands judgment against the Defendants, jointly and severally—or alternatively, a several judgment against each Defendant insofar as such Defendant may be found liable—for three (3) times the amount of Pharma Funding's actual damages, plus interest, costs, attorneys' fees, and such other and further relief as this Court deems just.

## COUNT III
## BREACH OF MONEY BACK GUARANTEE AGAINST YACOUB

63. Pharma Funding incorporates the allegations of paragraphs 1-34, 36-43 and 45-62 as though herein set out in full.

64. On or about April 16, 2019, YACOUB executed the Money Back Guarantee attached as **Exhibit B** in Houston, Texas, and delivered it, via the internet, to Pharma Funding in Newport Beach, California.

65. Pursuant to the Money Back Guarantee, in consideration of Pharma Funding's agreement to enter into the MPA and to purchase Qualified Accounts Receivable from SEM, YACOUB unconditionally and irrevocably guaranteed all payments and all other sums payable by SEM under the MPA or Purchase Addenda "with or without demand," and the faithful and prompt performance by SEM of each and every one of the terms, conditions, and covenants of the MPA to be kept and performed by SEM.

66. Pursuant to the Money Back Guarantee, YACOUB "shall reimburse [Pharma Funding], to the extent that such reimbursement is not made by the Seller, for all expenses (including legal fees) incurred by [Pharma Funding] in connection with the Quality Assurance Money Back Guarantee or the collection thereof."

67. Accordingly, YACOUB and SEM are jointly and severally liable to Pharma Funding for SEM's breach(es) of the MPA, for all amounts required to be paid to Pharma Funding thereunder, for SEM's conversion[1] for its civil theft of the Qualified Accounts Receivable, and for all of Pharma Funding's attorneys' fees, costs, and expenses in connection with this matter.

WHEREFORE, Plaintiff Pharma Funding demands judgment for damages against Defendant YACOUB, as guarantor for SEM's Breaches of the MPA, including punitive damages awarded for SEM's conversion of the Payment, and for three (3) times the amount of Plaintiff's actual damages as guarantor of SEM's civil theft of Pharma Funding's money, plus interest, costs, attorneys' fees, and such other and further relief as this Court deems just.

---

[1] *See* Count IV, below.

## COUNT IV
## CONVERSION

68. Pharma Funding incorporates the allegations of paragraphs 1-34, 36-43, 53-54, 56-58 and 61 as if fully set forth herein.

69. As demonstrated above, one or both of the Defendants have received Payments in specific, identifiable and separate electronic ACH/EFT transfers and/or checks on account of Qualified Accounts Receivable that were owned by Pharma Funding, and to which Pharma Funding had a right to possess, but have failed and refused to deposit or direct such Payments into the Beneficial Owner Account or otherwise deliver such Payments to Pharma Funding.

70. The Payments were delivered to Defendants for safekeeping, intended to be segregated from SEM's other accounts, kept as an intact fund to be deposited into the Beneficial Owner Account, and not subject to a title claim by Defendants or either of them.

71. Defendants have wrongfully and without authorization assumed and exercised control over such Payments to the exclusion of, or inconsistent with, Pharma Funding's rights therein, including Pharma Funding's ownership of and possessory rights in such Payments.

72. This wrongful exercise of control by Defendants substantially interfered with Pharma Funding's rights.

73. Pharma Funding did not consent to Defendants' wrongful exercise of control.

74. Pharma Funding demanded return of the Payments that Defendants had diverted but they have refused to deposit them into the Beneficial Owner Account or otherwise return those Payments to Pharma Funding.

75. Defendants' wrongful exercise of control over, diversion of, and failure to return the Payments to Pharma Funding proximately caused, and was a substantial factor in causing, the harm to Pharma Funding.

76. Defendants converted the Payments and are jointly and severally liable to Pharma Funding for compensatory damages in an amount equal to the value of such Payments, which value is $971,106.90.

77. Moreover, as demonstrated above, Pharma Funding provided SEM and YACOUB with specific information regarding certain Payments that had been issued to SEM on account of Qualified Accounts Receivable that were owned by Pharma Funding, and that such Payments had been negotiated but not deposited into the Beneficial Owner Account.

78. Nevertheless, the Defendants still failed and refused to deposit the majority of such Payments into the Beneficial Owner Account or turn over such Payments—or any subsequent Payments—to Pharma Funding consistent with Pharma Funding's rights therein. In so doing, such Defendants acted with actual malice, or at least gross negligence evidencing a willful, wanton, or reckless disregard for the rights and interests of Pharma Funding.

79. Accordingly, in addition to compensatory damages, Pharma Funding is entitled to an award of punitive damages against the Defendants, jointly and severally, as well as an award of attorneys' fees, court costs, and legal expenses incurred by Pharma Funding in connection with the subject matter of this action.

WHEREFORE, Plaintiff Pharma Funding demands judgment against the Defendants, jointly and severally—or alternatively, a separate judgment against each Defendant insofar as such Defendant may be found liable—for (i) compensatory damages in an amount equal to the aggregate amount of such Payments, (ii) punitive damages in an amount this Court determines to be sufficient to deter such conduct in the future, (iii) interest, costs, attorneys' fees, and (iv) such other and further relief as this Court deems just.

## COUNT V
## CONSTRUCTIVE TRUST

80. Pharma Funding incorporates the allegations of paragraphs 1-34, 36-43, 53-54, 56-and 69-70as if fully set forth herein.

81. This is an action to impose a constructive trust on funds wrongfully obtained by Defendants, and the proceeds thereof.

82. As shown above, one or both of the Defendants have wrongfully withheld or retained Payments that were owned by Pharma Funding, or the proceeds thereof, to which Pharma Funding was rightfully entitled.

83.  The retention by Defendants of the Payments is an unjust enrichment.

84. Accordingly, this Court should find that a constructive trust for the benefit of Pharma Funding arose over such Payments and the proceeds thereof, to which Pharma Funding is entitled, and which the Defendants ought not, in equity and good conscience, to hold and enjoy.

WHEREFORE, Plaintiff Pharma Funding demands judgment against Defendants finding and declaring that a constructive trust for the benefit of Pharma Funding arose over all Payments and the proceeds thereof, to which Pharma Funding is entitled. Plaintiff Pharma Funding further requests such other and further relief as this Court deems just.

DATED:  April 30, 2020.

      Respectfully submitted,

      **SHIELDS LEGAL GROUP**
      *A Professional Corporation*

      By: /s/ *David A. Shields*
          David A. Shields
          Attorney-in-Charge
          State Bar No. 24083838
      16301 Quorum Drive, Suite 250B
      Addison, Texas 75001
      Tel: (972) 788-2040

Fax: (972) 788-4332
E-mail: dshields@shieldslegal.com

**AND**

**LUBELL | ROSEN**
1 Alhambra Plaza #1410
Coral Gables, Florida 33134
Telephone: (305) 655-3425
Facsimile: (305) 442-9047
Emails: nss@lubellrosen.com
cbh@lubellrosen.com
Secondary: jenny@lubelrosen.com
ana@lubellrosen.com

By: */s/ Norman S. Segall*
NORMAN S. SEGALL, *PRO HAC VICE PENDING*
Florida Bar No. 158302
CYNTHIA BARNETT HIBNICK,
*PRO HAC VICE PENDING*
Florida Bar No. 375705

***Attorneys for Plaintiff***